Thank you, Your Honor. May it please the Court? And could you move the microphone just a little closer to you? Certainly. The district court judge decided a fact in this case in a motion to dismiss proceeding. She decided that there are no explicit representations of endorsement to cause consumer confusion. Not only should that fact not have been decided procedurally at a motion to dismiss stage, but the district court judge decided that fact incorrectly. She stated in a footnote in the case that this was a case about the mere inclusion of Mr. Brown. I don't think that that is true. Your Honors have before you in the second volume of the appendix, Exhibit F and Exhibit H, which are the boxes, and the boxes, Exhibit H has an area on the back which designates all of the trademarks and copyrights in the product, including Electronic Arts trademarks, John Madness trademarks, team logos, the NFL trademarks. And it also says officially licensed product of NFL players in all caps, which, of course, would include Mr. Brown. And then it has a catch-all. All other trademarks are the property of their respective owners. So it is simply not correct to say that there is just mere inclusion here. I would say also that why doesn't it suggest the possibility of confusion as to whether the officially licensed or the NFL Players Association or whatever that group is has authorized this? And why doesn't that suggest that Brown may have some kind of an action against them for licensing the teams and the logos and so forth rather than that Brown's got something against Electronic Arts? Well, it says officially licensed product of NFL players. Mr. Brown is an NFL player. So I think that that is confusing. And then the catch-all, where it says all other trademarks are the property of their respective owners, that would certainly include Mr. Brown as well. So I think it is confusing, but more to the point, because I don't think I can decide the facts any more than the district court judge can decide the facts. We need discovery in order for that to happen. More to the point, we don't know. We need to find out what is the reaction of the consumers. Are they misled? Was there, you know, depending on what test is used. In doing some new research for this case, because, of course, we have a new judge now, I did come across a case of his which bears some similarity to this in terms of the main point for Mr. Brown, which is that these facts should not have been decided. And that is the case of Norse versus the city of Santa Cruz, where Judge Thomas wrote a decision for nine members of this court, and there were two other members of the court that concurred in the decision. So there were 11 judges who agreed with the result. That was a case, it seems unlike this case at first glance, but actually it's not. It's a case about the city of Santa Cruz meeting, city council meeting, and someone gave a Nazi salute at the meeting, and they had a videotape of it and they had a transcript of the meeting. And the city claimed that summary judgment could be granted because everything was there to be seen. And what Judge Thomas said is that that was not the case, that still could not divine what the motivation of the mayor was at that time. And I would say the same thing here. The fact that the game is in front of the judge does not enable the judge to tell whether it is misleading or likely to confuse or explicitly misleading, whatever that term happens to mean. It appears that the district court judge thought that explicitly misleading meant that there had to be more than mere inclusion. And as I've said, there is more than mere inclusion by the box, but also this is an avatar. This is a performance. This is not just the mention in a title. This is not just a strip club that's in the background like in the ESS case. This is an avatar. This is the man's whole lifetime and something that can be used again and again. It can perform again and again. That is not mere inclusion. That is more than mere inclusion. And whether that leads to confusion or to- Counsel, how many players are potentially on the rosters? I think there's 1,500 approximately, Your Honor. And as I said last time, I don't think that there's any principle of law that says the more people's rights you infringe, there's some sort of immunity. No, but there is a you've got teams here that require 11 players on the field at a time. You know, if this were a tennis match, your argument I think would be strengthened greatly. But you've got Jim Brown among 1,500 other players, and it's not like he's been singled out in any way for publicity. Well, he has been singled out. I mean, we have cited in our papers, you know, the 50 greatest players and things of that sort, which obviously would include Jim Brown. But if we look at the no-doubt case, Your Honor's requested briefing on the no-doubt case after our last hearing. I think it was decided the day after. That involved 65 singing groups and 63 songs. So you could have 3,600 combinations. Or the example I gave last time, change Grand Theft Auto to Grand Theft Oscar. You could have 1,000 Academy Award winners. You could call them Tom Bruise rather than Tom Cruise. People know who it is. I don't think the number matters. I also don't think that your question really goes to Mr. Brown himself, because Mr. Brown is arguably the greatest football player that ever lived. Perhaps if another journeyman player brought a case, we would have a different situation. But I don't think that that is the case with Mr. Brown. I don't think that you could say Mr. Brown is incidental to the game of football any more than you could say Babe Ruth is incidental to the game of baseball. Mr. Brown is the reason. He's what endows this game with value. People want to play these stars. That's exactly why EA is doing this, because if they just had stick figures, if they just had anonymous players, nobody would buy this game. They buy it because they are trading on Mr. Brown's persona, just as the CBS evening news was using the performance of Mr. Zucchini in the famous human cannonball case. You're not saying that Mr. Brown, though, was put on the cover or anything like that, like you would see an endorsement? I believe Mr. Brown was on the cover here, Your Honor. I believe that if we look at it. That's why I'm asking the question, because I thought I saw that at one point in time, but I read your brief and I didn't see it highlighted at all. In Exhibit H, this person on the top here, in the Cleveland Browns, it looks like Mr. Brown has a mustache, same build. That is Mr. Brown. Yeah, okay. In Exhibit F, if you look at the back on the bottom left, a very typical move of Mr. Brown. I know, Judge Quist, you saw Mr. Brown play. Against the all-white Washington Redskins, I might add. Well, there was a quote at the time, interestingly enough, which probably gave the African-American players quite an advantage in certain circumstances. So moving to the test, I think that there are a number of tests here. Actually, the case that I cited before from Judge Thomas is illustrative of the point, which I'm sure you're all well aware of, that only an en banc panel of this Court can reverse a three-judge panel. That's actually what happened in that Norse case. But there have been a number of tests. We think the most relevant one is the likelihood of confusion, because we don't think anyone has a First Amendment right to speak in a confusing manner. And we've talked about how, although the Court just recently told us that you can lie, the Medal of Honor case, yes, I've seen that, although I think Congress is now acting. So the likelihood of confusion seems like maybe a possibility under the First Amendment, if you can lie about things. Well, I haven't studied that Medal of Honor case, but that was a disturbing case, I will grant you. But in the – that was a more unique factual situation than trademark. Trademark is very – has a long history, and you have the situation where likelihood of confusion is the main test. I don't think that there is a right to speak in a confusing manner. And it's interesting. We've talked about applying the Dr. Seuss test to the Rogers v. Grimaldi, but we haven't talked about the reverse. And it's interesting to see how it works in reverse. If we try to apply Rogers v. Grimaldi to the facts of Dr. Seuss, if you recall, the Dr. Seuss case was a report, in quotes, of the O.J. Simpson trial. And it was in the style of Dr. Seuss, which anyone who's had a child or anyone who's lived practically, it's very recognizable. It was quite clear that it was Dr. Seuss. Of course, just as they try to scramble Mr. Brown here, the person in that case tried to scramble a little bit and said it was Dr. Juice rather than Dr. Seuss. Well, again, this is sort of an intentionally failed disguising of who it is. It's quite clear who it is. So how do you distinguish ESS from this case? Obviously, that's controlling. Yes. ESS is very easy to distinguish because, as the court said, no one bought that video game to go to that strip club. It was strictly incidental. So that may be where Rogers v. Grimaldi would apply. If there's just a mere mention in a title or an incidental thing like a strip club, or maybe in this case if the stadium owner had brought the suit, if the owner of Brown Stadium had brought suit rather than Mr. Brown bringing suit, you could say that the stadium was incidental. So I think that it's quite easily distinguishable. But in the Dr. Seuss case, you have a situation where everyone knows it's Dr. Seuss, but is it explicit? Is it not explicit? That's one of the questions, is what is explicitly misleading? Because our position is it's fine if you want to apply. You're going to choose which test to apply. If you apply Rogers v. Grimaldi, we still win because it's a question of whether this is explicitly misleading or not. What does explicit mean? Explicit means just leaving it so that there's no question. There's no question that that was Dr. Seuss. There's no question that this is Jim Brown. Anyone who would be playing this game, who would have the knowledge of football to want to be the 65 Browns, would know that this is Jim Brown. The only reason that EA is using Mr. Brown is not to make any comment on him at all. It's solely to exploit all the hard work that he's done and all of his abilities so that they can sell more games. If I may reserve the rest of my time. Of course. Thank you, Your Honors. Mr. Katz, would you leave those two exhibits? Sure. ENF or ENH, I mean. I sent those back before the argument last time because I thought I had seen them and then I couldn't find them again. Would you like me to give them to Clark? Yeah. May it please the Court. Since we were before you the last time, the U.S. Supreme Court has decided unequivocally that video games are entitled to First Amendment protection just the same as plays, books, motion pictures, and other expressive works. What Mr. Brown's counsel fails to grasp or deal with is how the same rules, how the same things that he's talking about would apply if this were a motion picture that happens to be about Jim Brown or a play where Mr. Brown's character is one of the characters in the play. If you apply the same tests that this Court and other courts have applied to other expressive works, what becomes clear is that Mr. Brown's counsel wants to carve out some kind of lower standard of protection for video games or lower standard of protection for things about sporting figures, none of which is allowed under the First Amendment. But his point is not that. His point is that this is not a video game about Jim Brown. It is a video game starring Jim Brown. For example, if you had a video game or a motion picture, let's say about, well, we did this before, James Bond. And you had an avatar of Sean Connery. And you can make Sean Connery look like a human being with all the expressions of a human being. And you would have James Bond starring avatar Sean Connery. And that's his point, that you're not using any expression about Jim Brown. You're using Jim Brown, just like a movie would express, you know, a movie star.    And he's not using any expression about Jim Brown. He's using Sean Connery. And, Your Honor, that is not true. And wouldn't Sean Connery have a claim? No, Your Honor. I don't think Sean Connery would have a claim. In other words, you can take any movie star's persona, make it into an avatar, and use that movie star in a movie appearing like a normal human being. And doesn't no cartoon, you know, just like the gorilla that you see on these television ads, like a rock star that now performs as a hologram on a stage, Elvis Presley is going to perform all over the country on a stage in a hologram. You can do that. Well, Your Honor, in the first place, I think that that is not exactly what this case  is about. This is not the case. Well, I know. But that's where you're headed. I think you're taking the case involving a title and saying, well, you can do that to an avatar. Facts make differences. Facts do make differences, Your Honor. And I think that's important here because what that scenario talks about is not this case. This is not a case where someone is taking an avatar and pretending as if that is actually Tom Cruise performing in a movie. That's not this case. This is a case where, even according to Mr. Brown, you're doing something that's more akin to a documentary film, where you're portraying someone in a fictional work or even a factual work as the attributes of that player, but you're not pretending that that person in there is actually the person acting. It's clear from people looking at the video game that this is not Mr. Brown actually participating in a football game. But even if it were, even if it was... And it's also true that Sean Connery doesn't participate as a real James Bond, but you use his persona, his whole persona, in football. That's what James Brown does. He's a football player. His stage is the football field. Well, Your Honor, if you were taking Mr. Brown and putting him into a documentary film or a fictional film, a docudrama-type film, there's no question either by Mr. Brown or Mr. Connery that that would be a protected use under the First Amendment. What Mr. Brown is trying to do is to get this court under the Zucchini case. But this is a far different case than Zucchini. Zucchini is a sui generis case where someone took the exact entire act of a performer and put it on TV so that no one had to actually come and watch the performer. No one is claiming that people are going to stop watching professional football or stop paying professional athletes to play in games because of video games that allow players to recreate or to manipulate what actually happened in an actual game. Even in the Zucchini case, what the U.S. Supreme Court said was this is a very unique and narrow decision. We are only talking about someone taking the exact footage of this exact performance and broadcasting it. That's all. And the Court made that very clear. They didn't attempt to set out a test for future courts to apply, which was one of the criticisms of the decision. But this is not that case. This case is much more, as I said, akin to a situation where you're doing a program or doing a book or doing a movie about football, and Jim Brown may be one of the many players that's portrayed in that movie. But no one would suggest that if that were the scenario, that that would not be absolutely protected, including Mr. Brown. He's never grappled with how would his tests apply to those other kinds of expressive works. He simply chooses to ignore them. But the controlling test in this circuit is the Rogers v. Grimaldi test. That's what this Court has adopted in ESS, and in the Mattel v. Walking Mountain case, the Rogers test applies. And under that test, there's no real argument that the first prong is not met, that Mr. Brown somehow has no relationship to the video game or the content of a video game about professional football. In fact, they go to great lengths to say that he has everything to do with that. What Mr. Brown's counsel chooses to emphasize is the second prong, whether there's something explicitly misleading about the inclusion of Mr. Brown in a game about professional football. And I think there are two points that are important to make here. The first is the idea that this is something that a district court cannot decide as a matter of law is simply not true. In cases involving expressive works, this Court and the U.S. Supreme Court and other courts, these cases should be decided at the earliest possible stage so that you don't shill important speech. And you can apply the Rogers test, and other courts have applied the Rogers test, as a matter of law. In the cases from the circuit courts, including Rogers, including this Court's decision in MCA Records and Walking Mountain, the Court has looked at the work in question, and by looking at the work, decided whether or not there was anything explicitly misleading about the use of that particular person in that work. It's not enough that the character is in the work, which is what Mr. Brown's arguing here, that the fact that Jim Brown is portrayed in the game, which we're assuming for purposes of the appeal, that's not enough to make it explicitly misleading under the Rogers test. And that seems to be a given, and he's now not claiming that just nearly including Mr. Brown in the game is by itself explicitly misleading. But in applying the test, to finish my first point, there have been a panoply of district courts that have said repeatedly that you can apply this as a matter of law in a 12b-6 motion, including the recent cases that we supplied to the Court in the Louis Vuitton case, the Stewart case involving the film, involving Hannah Montana, the Burnett v. 20th Century Fox involving Carol Burnett's appearance as a caricature in a television program. Those cases have repeatedly said on a 12b-6 that if you have the work before you, which the district court did and this Court does, and you can look at the work, then the Court can decide as a matter of law whether the use is relevant to the work, which it is, and whether there's anything explicitly misleading. This Court has even said, applying the likelihood of confusion test in the Murray case, the Ninth Circuit said you can even apply that as a matter of law. So even when you're applying a test that is much more factual and which does not apply to an expressive work case, this Court said in Murray you could even do that as a matter of law if you can look at the exact things in question and decide that no reasonable juror could find that it's explicitly misleading. The California Supreme Court in both Winners and the Guglielmi cases said on Demers, both cases on Demers, so equivalent to a 12b-6, that they not only can be decided on Demers, but should be decided because of the important First Amendment interest at stake. So there's no question that the Court can decide as a matter of law. Which takes us to Mr. Brown's other point. Is there anything explicitly misleading about the alleged use of Mr. Brown in this game? What does it mean for it to be explicit? There's no claim that Mr. Brown is explicitly mentioned as having endorsed, participated in, or sponsored the game. He's not mentioned explicitly even in the game. There's an avatar that they claim is Mr. Brown, and we've accepted that for purposes of the Ninth Circuit appeal. But there's nothing that uses his name. There's nothing that mentions his name on the box or anywhere else. But what if you have a picture, for example, of Kelvin Johnson on a new game? And that picture is on the front of the game, or a Peyton Manning. I say Kelvin Johnson because I read that he's going to be on a new game. Wouldn't that be an endorsement by Kelvin Johnson of the name? Of the game, I mean? No, Your Honor. Merely including them in the game is not. No, no. I'm talking about his picture on the front of the box. Even if we had used it in an ad, which we did not, even if we had said in an ad Jim Brown and these other 50 players and we listed them are in the game, that is not an unprotected use of the first amendment. I'm talking about the picture on the cover of the game. Yes. Using the picture on the cover of the game of a player who is portrayed or used in the game or to which the game relates is a protected use. This Court said in the Scheer case, just as the California Supreme Court said in Guglielmi, marketing is irrelevant if the way you're marketing it is to refer to what's actually in the protected expressive work. So even if we were to say Jim Brown's in the game, that's a protected use under the First Amendment, just as using him in the game is a protected use. You mean you can put Kelvin Johnson's picture on the cover of one of these games and not pay Kelvin Johnson anything? Absolutely, Your Honor. Just as we could put his picture on the cover of an unauthorized biography and sell the book. The biography is certainly about him, just as we could do with Jim Brown. We could do an unauthorized biography of Jim Brown, put his picture right on the cover and sell that book and not pay Mr. Brown anything. And nobody disputes that, not even Mr. Brown's counsel. So what Mr. Brown's counsel essentially is saying to this Court is you have to treat video games differently. But the U.S. Supreme Court has said unequivocally that is not the case. Video games are expressive works that have to be treated the same as movies, pictures, plays, other kinds of protected works. You have to treat them the same. But that's how you distinguish, for example, your game from Muhammad Ali and his young grandson for the luggage ad. Luggage is different, Your Honor, because it's not an expressive work. The courts have very carefully drawn lines between expressive works and mere products that are not inherently expressive. And they've also drawn a very careful line, which we're not contesting, between the use of someone in an ad unrelated to the expressive work in which they appear and the use of someone in an expressive work, even if you're advertising the fact that the expressive work is about that person. So for example, the cases that Mr. Brown's counsel relies on, the Vanna White case, the Tom Waits case, those are advertising cases. Kareem Abdul-Jabbar. You can't use Kareem Abdul-Jabbar's name and likeness to sell cars. That's not a permissible use. But if you want to do an unauthorized biography of Kareem Abdul-Jabbar, the Constitution permits you to do that. You can put his picture on the cover. You can use his name. You can sell that book. What happens if we have a biography of Jabbar and it says the maybe authorized biography or the authorized biography? If it's not an authorized biography and you say that, that is explicitly misleading. But that's not this case. So how are consumers supposed to know when they buy the Madden game whether the use of Jim Brown's picture, and it's obviously Jim Brown on the cover, whether it's authorized or unauthorized? How is a consumer supposed to know is not part of the test? Even if a consumer believes by looking at the box or assuming his picture is on the box, which it isn't, but assuming it was. Even if a consumer looks at the box or the unauthorized biography and they assume or believe or are confused about whether Mr. Brown is participating in that, that's not enough under the Rogers test. It has to be an explicitly misleading use of that name or likeness. And what Rogers says is it has to be overt. It's not enough that someone might assume that the person is participating. And in the Rogers case, they actually used the names of Ginger Rogers and Fred Astaire in the title. It was called Ginger and Fred. And even using it in a title, which is much more explicit than anything Mr. Brown's counsel is claiming here, that wasn't enough because you're using them in, if you're referring to them in the actual work, which the Court said they were, even using the names in the title was not enough. And the fact that consumers might be confused, not that there's evidence of that here, but assuming they were, that's not enough under the First Amendment. The ETW case and the Alabama case, which we cited to this Court, the recent case from the University of Alabama, all said it's not enough that a consumer might be misled or even that there's evidence that they were misled. It has to be an explicitly misleading use. In other contexts, as we presented to the Court, looking at the word explicit requires a lot more than the assumption or the implication that something might be true. It has to be something overt, something direct. And in the bankruptcy cases, the Court said in the Kennerly case, for example, from the Ninth Circuit, anything that's ambiguous or implicitly misleading doesn't meet that high standard. Webster's Dictionary, explicit means expressed without vagueness or ambiguity, specific. And again, the ETW case, the Court said it has to be an explicit indication on the face of the work that plaintiff has sponsored this particular work. And there's nothing here. Now, Mr. Brown's counsel wants to talk about the box and talk about this, the little logo of the Players, Inc. Association, and it's interesting because that was never raised in the district court or in his opening brief to this Court. But now, I guess having exhausted other arguments, now we're going to talk about the box. The box doesn't say anything about Jim Brown. It doesn't mention Jim Brown's name. It is certainly not explicit as to Jim Brown. The Players Association logo refers to the Players Association, not individual players. By analogy, if someone were to say the Davis-Wright partnership has endorsed this game, that certainly doesn't mean every partner in the firm has endorsed it or even that every partner agrees with it. The Ninth Circuit might do something as the Ninth Circuit. That certainly doesn't mean that every judge agrees with it or every judge endorses it. Mr. Brown even takes it further, saying that analogy like all people like the game would be enough to include Mr. Brown because he's a person just like everyone else. That's not an explicit reference to Mr. Brown. And you can see the level of absurdity you get to if you say merely because you're in a group that may be referred to on a box that somehow that's an explicit endorsement by you. It simply is not the case. And none of the cases that are cited by either side permit you to draw that inference. It has to be something that is explicit. In the game, current players are shown, their facial features, their numbers and so forth. Retired players are not. And there certainly can't be an implication because current players, the Players Association, players on the box, that those players are involved in the game, that someone who's no longer even a player is somehow endorsing or sponsoring or involved in the game. Thank you, counsel. Thank you. Thank you, Your Honors. I will be brief. It is not our position that you cannot make historical motion pictures or documentaries or unauthorized biographies. That is not encompassed within our theory whatsoever. Again, referring to the Dr. Seuss case, there's no explicit statement that Dr. Seuss endorses this presentation of the O.J. Simpson trial. Counsel, what if you had a book that said, it was titled something like What If? And it said, you know, what if Jim Brown were put up against the greatest running backs of today? How would he fare? A speculative piece. Now, if that's reduced to a movie in which somebody says, let's put these guys side by side, show you how fast they ran under the circumstances, equipment's changed, here's what might have happened. And then what if somebody says, I've got a computer model that will let you sort of put Jim Brown up against everybody else? At what point does Jim Brown have an action here? Well, I think that Your Honor brings up an excellent point. You know, we have cases that are based on actual games, actual history. We have the fantasy game, the CBC case, where the court decided, the Eighth Circuit, I think, decided that the batting average of Barry Bonds is in the public domain, so that's not a problem. All these statistics are in the public domain. But they're not doing that. They're not playing a game that's ever been played here. They're just taking, it's worse than zucchini. They're taking everything that Jim Brown ever was and putting it into an avatar and doing a performance to make money. That's all they're doing. They're not making any comments on Jim Brown. All they're doing is using him. But when you verge over, as Your Honor's hypo does, into actual statistics and things that actually happened, then you have a different case. But these games that are played never happened and never will happen. Right, but isn't it a form of computer modeling? Well, it's definitely computer modeling. The avatar of Jim Brown that models his performance is computer modeling, but that does not mean that it's protected by the First Amendment. If it's confusing, and I would submit to you that it is confusing because you have, it's clearly Jim Brown, and you have more than mere inclusion. You have the box. You have the contents of the box, the instructions, et cetera. But ultimately, why isn't it just a work of fiction? These things will never happen. Jim Brown will never play against the current Detroit Lions. The fact that it's a work of fiction does not mean that it cannot be confusing as to sponsorship, Your Honor. That's the question that has to be answered in a trademark case. Is it confusing? Is it likely to confuse? And that question simply has not been answered in this case and really could not be answered in this case at this stage. I'll say what I started out with. The district court judge made a decision of fact. She made a ruling of fact, a finding of fact, an incorrect finding of fact. We'll get the answer to all these questions as this case proceeds, but I don't think that this case is in a posture where Your Honors can decide all these weighty questions about weighing the First Amendment against trademark and things of that sort based on this record. It should not be based on a record like this. Thank you, counsel. The case is here to be submitted for decision.
judges: Thomas, Bybee, Cjj Quist (W. Michigan), Dj